UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
-----------------------------------------------------------------x
UNITED STATES OF AMERICA

    -against-                                          Second Cir. Case #
                                                            16-1613

DAQUAN REID,
                                    Defendant.
-----------------------------------------------------------------x

# MEMORANDUM OF LAW

                                                    BRYAN KONOSKI
                                                    Treyvus & Konoski, P.C.
                                                    *Attorney(s) for the Defendant*
                                                    305 Broadway, 14th Floor
                                                    New York, NY 10007
                                                    (212) 897-5832
                                                    Fax: (718) 668-1094
                                                    Email: bkonoski@aol.com

TO:    CLERK OF THE COURT
         UNITED STATES
         SECOND CIRCUIT COURT OF APPEALS
         Thurgood Marshall United States Courthouse
         40 Foley Square
         New York, New York 10007

         UNITED STATES ATTORNEY'S OFFICE
         One St. Andrews Plaza
         New York, NY 10007

# Table of Contents

I. PRELIMINARY STATEMENT……………………………………………………..1

II. PROCEDURAL HISTORY..……………………………………………………..2

   A. Indictment and Arrest ……………………………………………………..2

   B. First Bail Hearing……………………………………………………………2

   C. Second Bail Hearing (Bail Review)…………………………………………...4

III. DAQUAN REID'S BACKGROUND…………………………………………...5

IV. APPLICABLE LAW…………………………………………………………….6

V. ARGUMENT………..…………………………………………………………...8

VI. CONCLUSION…..……………………………………………………….....17

i

# Table of Authorities

States v. Jessup, 757 F.2d 378 (1st Cir. 1985)..................................................8

United States v. Clarke, 2000 WL 1499344 at *4 (N.D.N.Y. 2000)......................7

United States v. Contreras, 776 F.2d 51 (2d Cir. 1985).......................................7

United States v. Hare, 873 F.2d 796, 798 (5th Cir. 1989).....................................7

United States v. Hurtado, 779 F.2d 1467, 1471 (fn.4)(11th Cir. 1985)..................8

United States v. Kirkaldy, 181 F.3d 83 (2d Cir. 1999).........................................7

United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986)...............................7

United States v. Mercedes, 254 F.3d 433 (2d Cir. 2001).....................................7

United States v. Quartermaine, 913 F.2d 910, 916 (11th Cir. 1990).....................7

United States v. Rodriguez, 950 F.2d 85 (2d Cir. 1991)......................................7

United States v. Rodriguez, 950 F.2d at 88 (2d Cir. 1991)..................................7

United States v. Validivia, 104 Fed. Appx. 753, 754 (1st Cir. 2004)....................7

# I.
# PRELIMINARY STATEMENT

Mr. Reid is a 21-year-old young man. He lives at home with his mother in Bronx County. From the moment the charges were initiated against Mr. Reid his family has demonstrated their unwavering support. Three or four members of his family appeared for him during each Court appearance. Moreover, Mr. Reid's family promptly provided a list of financially responsible individuals who would be willing to co-sign bond, and he has family willing to allow him to reside with them in the event he is placed on home incarceration pending trial or a resolution in this matter. Due to Mr. Reid's lack of a criminal record he has a level I criminal history category. Moreover, assuming he appears for a "safety valve proffer" in the future, he is also possibly "safety-valve" eligible.

On April 27, 2016, the indictment in this case was unsealed charging the Defendant with two felonies. On May 9, 2016, during a bail hearing, the Court set satisfactory bail conditions for Mr. Reid, which included home detention and location monitoring. However, on May 11, 2016, during a bail review hearing, the District Court reversed the decision and remanded Mr. Reid. Although the charges are undoubtedly serious, it is our position that there are bail conditions that can be set in this case that would ensure that Mr. Reid returns to court and is not a risk of danger to the public. At this time, we are asking this Honorable Court to reverse the decision of the District Court and re-set appropriate bail conditions for Mr. Reid.

# II.
# PROCEDURAL HISTORY

## A. Indictment and Arrest.

On April 27, 2016, the indictment in this case was unsealed charging the Defendant with (a) narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); and (b) narcotics distribution within 1000 feet of a school, playground, or public housing development, in violation of Title 21, United States Code, Section 860.

The Defendant was arrested on April 27, 2016, and was presented before Honorable Frank Maas, United States District Judge. At that time, the Defendant consented to detention without prejudice to future applications.

## B. First Bail Hearing.

On May 9, 2016, Honorable Ronald L. Ellis held a bail hearing. The transcript of the hearing is attached as Exhibit A. At that time, the defendant was granted bail subject to the following conditions:

- A personal recognizance bond of $50,000 signed by three financially responsible persons;

- Travel restricted to the SDNY and EDNY;

- Surrender of travel documents and no new applications;

- Strict pretrial supervision with drug testing and treatment;

- Home detention with location monitoring;

- The defendant must seek and maintain employment or enroll in a GED or other educational program;[1] and

- The defendant must be released once all the conditions are met.

Judge Ronald Ellis set forth his rationale for setting bail conditions. Those reasons include:

- Mr. Reid has reached the age of 21 years old without a serious criminal record and apparently no convictions (Exhibit A, P. 28, L. 8-21);

- Mr. Reid is not charged with racketeering (Exhibit A, P. 28, L. 24-25);

- Mr. Reid is not actually claimed to be a member of the BMB gang (Exhibit A, P. 28, L. 25; P. 29, L. 1);

- There are no claims involving Mr. Reid's possession or use of firearms (Exhibit A, P. 29, L. 1-2; also see L. 1-8);

- At least on paper, Mr. Reid is "safety-valve" eligible (Exhibit A, P. 29, L. 12-13);

- Family support and significant ties to the community (Exhibit A, P. 30, L. 1-11).

Judge Ellis stayed the decision granting bail for 48 hours.

---

[1] Judge Ellis indicated that this condition does not need to be met upon release. (See Exhibit A, Pg. 31, L. 12-21).

## C. <u>Second Bail Hearing (Bail Review).</u>

On May 11, 2016, a bail review hearing was held before Honorable Alison Nathan. At that time, the defendant was denied bail and was remanded.

Judge Alison Nathan issued a short form Order remanding the Defendant without bail. See Exhibit B. Additionally, Judge Nathan set forth her rationale for reversing Judge Ellis' decision, and remanding the Defendant, on the record in open court.

The transcript of the bail review hearing is not available for submission to the Court at this time. In the event that it becomes available it will be submitted to the Court.

## III.

## **DAQUAN REID'S BACKGROUND**

In this case, the indictment charges the Defendants with various crimes, including: (a) racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d); (b) narcotics conspiracy, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A); (c) distribution of narcotics within one thousand feet of playgrounds and schools, in violation of Title 21, United States Code, Sections 846 and 860; and (c) firearms discharge, in violation of Title 18, United States Code, Section 924(c)(1)(a)(iii).

Notably, Daquan Reid is not charged with the racketeering conspiracy, under count one of the indictment. Nor is he charged with firearms discharge under count four of the indictment. His charges are limited to the narcotics conspiracy and for selling narcotics near a school zone, under counts two and three. Thus, while all charges in the indictment are undoubtedly serious, Daquan Reid is not alleged to have participated in some of the *most serious* allegations in the indictment.

Mr. Reid is a 21-year-old young man. He lives at home with his mother in this district, and his family informs me that he has never traveled outside of the country (except for once in 1999 when the family visited Jamaica). From the moment the charges were initiated against Mr. Reid his family has demonstrated their unwavering support. Three or four members of his family appeared for him

during each court appearance. They also came to my office to ask questions. I have been in regular contact with his family and they have taken a very significant interest in Mr. Reid's welfare. Moreover, as Mr. Reid's family promptly provided a list of financially responsible individuals who would be willing to co-sign bond.

While the Government highlights a history of arrests in their memorandum to the Court, Mr. Reid has no criminal conviction history. Moreover, despite the Government's efforts at describing Mr. Reid as a violent individual, such allegations are not demonstrated by Mr. Reid's documented criminal history, nor his alleged conduct as set forth in the indictment in this case.

Due to Mr. Reid's lack of a criminal record, it is anticipated that he has a level I criminal history category. Moreover, he is also possibly "safety-valve" eligible.

## IV.

## APPLICABLE LAW

18 U.S.C. § 3142(e) provides that "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act." The indictment here charges such an offense, thus, the statutory presumption in favor of detention applies to this case.

*See, e.g., United States v. Rodriguez*, 950 F.2d 85 (2d Cir. 1991); *United States v. Contreras*, 776 F.2d 51 (2d Cir. 1985).

Nevertheless, the presumption contained in § 3142 places only a burden of production on the accused. That burden can be satisfied by coming forward with some evidence tending to rebut the presumption. This burden of production should not be confused with a burden of persuading the Court on any factual issue. *See, e.g., United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986); *See also United States v. Mercedes,* 254 F.3d 433 (2d Cir. 2001) (accused bears limited burden of production - not of persuasion); *United States v. Validivia*, 104 Fed. Appx. 753, 754 (1st Cir. 2004) (regardless whether presumption rebutted, burden of proof remains on Government); *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990) (accused's obligation to come forward with evidence does not shift Government's burden of persuasion); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (presumption shifts to accused burden of production not persuasion); *United States v. Kirkaldy*, 181 F.3d 83 (2d Cir. 1999); *United States v. Rodriguez*, 950 F.2d at 88 (same); *United States v. Clarke*, 2000 WL 1499344 at *4 (N.D.N.Y. 2000) (statutory presumption imposes only burden of production on accused; burden of persuasion always remains with Government, to establish dangerousness by clear and convincing evidence).

As the Eleventh Circuit noted,

> "[o]nce the government establishes probable cause it becomes the task of the defendant to come forward with some quantum of evidence contrary to the fact presumed by the statute. Having done so, the defendant has met his obligation. The ultimate burden of persuading . . . still rests with the government."

*United States v. Hurtado*, 779 F.2d 1467, 1471 (fn.4)(11th Cir. 1985)(*citing United States v. Jessup*, 757 F.2d 378 (1st Cir. 1985)).

## V.
## ARGUMENT

The Government's memorandum to the District Court addressed the nature and circumstances of the offense as it relates to Daquan Reid, starting on Page 5. See Exhibit C. The Government notes that the gang "controlled its drug territory through violence and threats of violence." However, the Government is unable to point to a single instance of violence perpetrated by Mr. Reid. Instead, the memorandum notes that "the danger is particularly captured by count 3, which charges Reid with trafficking near schools and playgrounds". (Pros. Memo, P. 5; Ex. C). Yet, the Government does not actually describe the instances in detail when Mr. Reid allegedly trafficked narcotics near schools and playgrounds. We do not know what dates and times this activity allegedly occurred. And, the Government does not reference that this activity was captured on any video recordings.

Therefore, it can only be presumed that this alleged activity was not recorded. In any event, even if Mr. Reid is alleged to have sold drugs near playgrounds or schools, this should not automatically result in detention – especially in this case where the Government does not set forth the breadth of the Defendant's alleged involvement.

The Government also attempts to argue that Mr. Reid's offenses demonstrate that his return to Court cannot be assured. In part, the Government cites to his 10-year mandatory minimum sentence. (Pros. Memo, P. 5; Ex. C). First, this argument is not persuasive in Mr. Reid's case. It is at least theoretically possible that Mr. Reid, who appears to fall within a level I criminal history category, may be eligible for a "safety-valve" departure in this case. If he is "safety-valve" eligible, this may allow him an opportunity to avail himself of a sentence less than the statutory mandatory minimum.

In their memorandum submitted to the District Court, the Government argues that the Court should not consider the fact that Mr. Reid may be "safety-valve" eligible because "defense counsel has not scheduled a time for his client to come in and proffer, and acknowledged that at this time he is merely 'exploring' the option." (Pros. Memo, P. 5-6; Ex. C). Although the prosecution is correct that I have not yet scheduled an appearance in their office for Mr. Reid, the opportunity to avail the Defendant of a "safety-valve" departure is being seriously considered. It is also important to note that Title 18, United States Code, Section 3553(f) provides ample

time to appear for a "safety-valve" proffer and allows a Defendant to appear "not later than the time of the sentencing hearing". I assert that the Court can consider that Mr. Reid is, at least "on paper", "safety valve" eligible. However, even if the Court chooses to adopt the Government's argument that the availability of "safety-valve" eligibility should not be considered, the Court certainly may consider: (a) the fact that Mr. Reid is 21 years old and managed to avoid a criminal conviction despite residing in a high-drug traffic location; (b) the fact that Mr. Reid appears to have a Level I criminal history category based on information provided by pre-trial services; (c) the fact that Mr. Reid is not alleged to be an actual BMB gang member and, therefore, is not a manager or leader of the gang. Since all of these factors essentially go to the heart of "safety-valve" eligibility, I assert that the Court may consider the fact that Mr. Reid may be "safety-valve" eligible as a factor in setting bail.

The Government attempts to demonstrate that Mr. Reid is a flight risk because "several charged defendants in this case and the corresponding case . . . remain fugitives." (Pros. Memo, P. 5; Ex. C). I would assert that it is inappropriate for the actions of other charged defendants to be taken into consideration as part of Mr. Reid's bond hearing. Mr. Reid has no control over other defendants who chose to flee. It is also currently speculative as to whether these individuals did, in fact, "flee", or whether they may not know they are wanted by the Government. In any

event, regardless of the intention of certain individuals who have not yet been brought before the Court, it is clear that Mr. Reid did not flee and is currently in custody awaiting a determination on his bond hearing. Moreover, Mr. Reid was arrested without incident.

The Government argues that the evidence is strong as against Mr. Reid. The Government argues that there are "multiple cooperating witnesses who corroborate each other, as well as social media evidence and Reid's arrest record" which lends to the strength of the case. It is argued that there is proof that Mr. Reid had a connection to a residence at 226th Street in the Bronx where drugs were sold (i.e., an alleged "stash house"). However, the Government concedes that Mr. Reid was not arrested at the 226th Street drug sale location. Thus, it is questionable how strong of a connection exists to tie Mr. Reid to that location. The fact that the Mr. Reid was not arrested at that location militates against a determination that there is a strong tie to that drug location.

The Government also attempts to paint Mr. Reid as a violent individual. They indicate that Mr. Reid "discussed plans for a shooting against members of a rival gang 2Fly in retaliation for an earlier shooting of Burrell's sister and fellow BMB member Michelle Jemison, a/k/a "Pebbles"." (Pros. Memo, Pg. 6; Ex. C). The Government claims "Reid agreed to participate in the shooting". (Pros. Memo, P. 6; Ex. C). This allegation that Mr. Reid is prone to violence is weak, at best. The

Government concedes that this information would be established by "cooperating witness testimony". (Pros. Memo, P. 6; Ex. C). The Government acknowledges that there is no corroboration of this particular conversation at this time. (Minutes, P. 11, L. 3-5; Ex. A). The Defense asserts that "cooperating witness testimony", without some other strong corroboration, is particularly weak evidence. Moreover, during the bail review hearing the Government alleged that this conversation occurred in the "fall of 2014". That would effectively mean that the conversation occurred in or about September through November of 2014 – approximately 1 ½ years before Mr. Reid's arrest in this case.

      Moreover, the Government also conceded during the initial bail hearing that they do not know "whether he meant it at the time or not", when Mr. Reid allegedly engaged in this conversation. (Minutes, P. 13, L. 2-7; Ex. A). However, during the bail review hearing the Government changed their position and claimed that they did believe that Mr. Reid "meant it when he said it". Despite the Government's change in position, it is clear that Mr. Reid was not implicated in any actual act of violence. He is not alleged to have possessed a gun, fired a gun, or inflicted an injury on anyone, nor is he alleged to have attempted any assault. He is not alleged to have engaged in any act of violence connected to this purported conversation to participate in a shooting. The Government conceded in both the first bail hearing, and the bail review hearing, that they had no proof that Mr. Reid engaged in any acts

of violence whatsoever, and they had no knowledge that he engaged in any retaliatory conduct taking place. (Minutes, P. 11, L. 14-20; P. 12, L. 15-18; Ex. A). Additionally, during the bail argument, the Government confirmed that there are no allegations either in the indictment or otherwise that Mr. Reid was in possession of any weapons. (Minutes, P. 11, L. 9-13; Ex. A).

The Government also highlights Mr. Reid's social media postings to demonstrate that he was involved in narcotics trafficking. However, as mentioned above, even if it is true that Mr. Reid was involved in narcotics trafficking, he still likely falls within a level I criminal history category. And, as also discussed above, it is also theoretically possible that he may be "safety valve" eligible.

There have been no allegations from the Government that Mr. Reid is a manager, organizer, or supervisor of the BMB gang. He is not alleged to have any leadership role in the organization. In fact, the Government concedes they are not even claiming Mr. Reid is an actual member of the BMB gang. (Minutes, P. 7, L. 16-19; Ex. A). While the Government is claiming that he dealt drugs with the approval of the BMB gang, and therefore had some affiliation with the Gang, his affiliation was clearly not strong enough for him to have been offered an actual position within the gang. Therefore, it is impossible for him to have held any leadership role in the organization. Based on this factor alone, Mr. Reid held a relatively minor role in the overarching conspiracy alleged in this case.

The Government also argues that Mr. Reid has had numerous contacts with the criminal justice system. Moreover, the Government tries to tie Mr. Reid to the 226th Street location, in part, by a drug transaction that occurred "in the vicinity of 227th Street" in which an "NYPD officer observed him take a large object appearing to be narcotics and exchange it for cash with another individual". (Pros. Memo, Pg. 8; Ex. C). However, according to the Government, this turned out to be marijuana. Although the Government claims that it was a "large quantity of marijuana", Mr. Reid's criminal case was resolved with an adjournment in contemplation of dismissal (ACD), and his case was ultimately dismissed. The Government also references an instance when Mr. Reid was arrested for possessing 10 oxycodone pills. (Pros. Memo, Pg. 8; Ex. C). However, this incident also did not result in a conviction for Mr. Reid. Mr. Reid's position is that the oxycodone pills were not his; they were his aunt's prescribed pills. His aunt appeared in court and claimed that the pills were her prescription pills and the charges against Mr. Reid were dismissed. Although Mr. Reid has had a few arrests, the fact remains that he does not have any criminal conviction history.[2]

The Government also states in a footnote that "Should Reid . . . be charged in a Superseding Indictment, he could face additional serious penalties, increasing the

---

[2] Pre-trial services indicates that the ACD as an "open case". That ACD was ordered in early April of 2015. The longest possible ACD time frame is 1 year. Consequently, this arrest should not be "open". At this point, by operation of law, the case should be dismissed and sealed.

risk of flight." (Pros. Memo, Pg. 5, FN 2; Ex. C). However, the Government has not provided any additional facts that would justify any new charges, nor has the Government pointedly indicated whether there will be any new charges brought against Mr. Reid. During the bail review hearing, the Government simply stated that a racketeering charge is being "considered". However, based on the information contained in the indictment, and in the prosecutions memorandum, the strongest allegations would be the narcotics crimes, for which Mr. Reid is already charged. And, as discussed above, Mr. Reid may possibly be "safety valve" eligible for those alleged crimes. The only reasonable conclusion is that it is unlikely any new charges will be brought against Mr. Reid. The mere possibility of additional crimes being brought against Mr. Reid should not be considered by the Court.

Based on the information above, the Government is unable to demonstrate that the Defendant is such a risk of flight, or risk of danger to the community, such that there are no Bond conditions available that would ensure his return to court or the safety of the community.

In addition to the argument above, it is also important to note that Mr. Reid has significant ties to the community and also has exceptional family support. His family has been extremely supportive of Mr. Reid. On each court appearance he has had 3 or 4 family members present on his behalf. Some of his family members, who have been extremely supportive, include: (a) Carlene White (mother; she is willing

to accept Mr. Reid into her home for home detention); (b) Tanisha Monroe (sister; very active as a point of contact and has also been a point of contact for pre-trial services); (c) Sandra Wallace (godmother and proposed co-signer); (d) Maria White (aunt and proposed co-signer); and (e) Natasha Courtwright (family friend and proposed co-signer). At the bail review hearing a question was raised by the Court as to whether Mr. Reid's mother resided close to the location where the crimes took place. In response, I informed the Court that the family would be in a position to propose another individual who would be willing to allow Mr. Reid to reside with her in Yonkers, which is far removed from the location of the alleged criminal conduct. To my knowledge, this alternative proposed residential location is still available for Mr. Reid if the Court sets bail conditions and allows him to be released from custody.

Finally, the Court should also consider the fact that pre-trial services has recommended that Mr. Reid be released from custody with bail conditions.

## VI.

## CONCLUSION

Based on all of the above, the Government has failed to meet its burden under 18 U.S.C. § 3142(e), and Mr. Reid has clearly come forward with sufficient facts to rebut the presumption. His pretrial release under the bail package set by Judge Ellis, which is restrictive and includes home detention with electronic monitoring, will more than address any concerns regarding risk of flight or danger to the community. Mr. Reid's family and friends are prepared to come before this Court where they intend to stake their financial futures on the presence of the Mr. Reid at each and every court appearance. Each potential surety understands that they will be jointly and severally liable for the entire amount of the bond should Mr. Reid fail to return to court. Mr. Reid, a United States citizen, will appear in court when required to do so, comply with all the very restrictive conditions imposed by this Court, and cooperate with United States Pre-Trial Services. He understands that his failure to return to court would result in the financial ruin of his family and friends and would result in additional charges being levied against him.

Sincerely,

BRYAN KONOSKI